Mr. Dent was adopted in 1981 by Roma Dent, a U.S. citizen, who that same year, as required and in compliance with the statute, applied to naturalize him. Dent urges this Court to grant him citizenship as a remedy for the equal protection and due process claims that he has alleged. At a minimum, Dent is entitled to a remand for trial on the due process claim because the District Court erred in granting summary judgment in favor of the government on that claim. And finally, Dent is not an aggravated felony. I'd like to turn first to the due process claim and highlight four factors. One, procedural, and three key documents that show why here, unlike in the Brown case, it was clear and is clear on this record that Dent was at risk of aging out. The agency knew it, and the agency ignored that risk, which prejudiced him. Well, my problem with your argument on this is that the agency set up more than once an interview time and a schedule, and he didn't show up, and he didn't say why he didn't show up. He didn't say, I can't show up. He just didn't show up. So what's the agency's responsibility, if any, if someone is given that opportunity multiple times and simply doesn't come? So I think you point out the first beginning fact, which makes this case different from Brown. And those two interview notices, the first ones, show that the agency had his application, knew his birthday, and had it in hand when it was acting on it. But what's important is I think the key to this case is that 1984 corresponds with his mother. There's deposition testimony which shows that the agency never closed his case and would put these cases on in the file room if awaiting contact from the parent, and that's what she did. At most, that shows negligence, it seems to me. Not as of 1984. So by 1984, there had been two missed interviews, and the mother, Roma Dent, is in contact with the agency. And we have to acknowledge here, as the government admits in our record, that there is correspondence that's missing, right? So we have her corresponding with the agency before 1984. In August 1984, that's a pivotal moment because the file is open. She has obviously, and this is on 487 of the record, she has obviously corresponded with the agency or reached out to make some kind of status inquiry. And the agency responds back to her, thank you for contacting us. We will do everything we can to get him his citizenship. Please provide the information. She handwrites a note which says, is 16, will be 17 November 15th. And at that moment, she has flagged his risk of aging out because there are only 15 months left on the clock. They have his application, so he's always had this risk of aging out. Now it is getting to the point where it is emergent because the Dents live in Arkansas, and we have deposition testimony from the government saying there are only two circuit rides left at that point. So it is now emergent. There are two circuit rides left. And we also have Officer Gallman on the record testifying that the agency, and I quote, should have scheduled the interview and failed to do so. But why isn't that negligence as opposed to deliberate indifference? I'm looking here for some evidence of ill intent, and I'm also, I guess, concerned about the fact that even later, he still continues failing to show up when all he needs to do is take the oath of citizenship. He keeps moving around. He doesn't tell them where he's going to be. You know, there's a lot of contributory negligence here, I guess, is what this record says to me. So we maintain that what he has shown on this record satisfies the test that this court set forth in Brown. I'm suggesting to you that if you have competing negligence here, that that doesn't satisfy the test, that he's got some aggravating facts here that were not present in Brown. Okay, so I want to – And I'd call them failures to appear for want of a better term. I understand. So let me just walk through how we – how I understand those particular acts to hang together. So the test in Brown is a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed. And as I've noted in my 28-J, we do believe that should be an objective standard, but we also believe on this record that the subjective standard could be satisfied, and that that 1984 note conveys that, right? Counsel, I need to ask you, because we're going to get caught up with your time constraints, I need to ask you the following. Once your client turned 18, he was no longer eligible for whatever that form number is, but he could naturalize as an adult. Yes. And he started that process. Yes. So why is any of that previous stuff even relevant? Because he had an avenue, and he began that avenue, he had his interview, and once again he stopped showing up. So I don't even understand what difference it makes what happened when he was under 18, because when he was over 18, the agency set up that interview and was going through the process, and he kept missing again. And so I don't even understand why it matters what happened when he was a minor. It matters because the agency testified that had he shown up for the interview, and I understand your concerns about the two earlier interviews, right? But after 1984, we have an emergent situation. We have testimony on the record that when he's getting close, the agency would give these cases priority and pull the file and get it done. But, Ms. Brown? They didn't do that. And the prejudice ‑‑I want to ‑‑ But I don't understand where the prejudice is, because he had a different, albeit a different process, he had an efficacious avenue to pursue as an adult, and he started down that road, and the agency was fully cooperative with him in that alternative method, and he dropped the ball. So I don't understand why we even talk about what happened when he was a minor. We talk about it because of Brown. This Court's decision in Brown said that he had a protected interest in applying for citizenship. But he applied for it. He applied for it as an adult. And he was prejudiced because he gets routed into the adult process without his mother. Ms. Brown, they approved his application for citizenship, even though he missed the third appointment, which was supposed to be for his interview. Then they accommodate him the next day. They have him fill out the adult application. They approve it. And all he has to do is take the oath of citizenship, and he disappears again. So how is there a deliberate indifference on this record? So the deliberate indifference is that the agency had the information, and this satisfies the Brown test, in 1984, that he was about to age out. They failed to act. The pivotal moment is he had an opportunity to become a citizen as an adult, regardless of what happened when he was a minor. It was right in front of him. And it was his doing that he didn't take that opportunity. So I have a causation issue, I guess, with the whole discussion of what happened when he was a minor. So I understand your concern, but I think it goes back to the agency. The agency mishandled his application, and therefore he aged out. And then as a result, also in Brown there was another opportunity, right? But he lost the benefit that Congress provided to minors and to U.S. citizen parents to go through that process. He lost that. And then he's on his own with his adult application as an 18-year-old. And granted, we understand that he made some mistakes during that process, but we also have the government, again, not following its policy on notice and how the petitions are handled when they can't find the person. They did not comply with their own policy. So that just makes it worse, compounds the error that they originally did. Our case law says that an agency's failure to comply with its own policies is not evidence of deliberate indifference. It may be evidence of negligence. It may be evidence of gross negligence, but it is not evidence of deliberate indifference. So here's another reason why I don't think it's just negligence. And the district court ignored the note from 1985 that there may have been improper motive here. What's the improper motive? The improper motive was that the district court handling his application called the INS and is talking about deporting him. And we don't know exactly what transpired, but the district court is the one that would grant his application at the end of the day. But isn't one of the relevant considerations to granting the application whether or not the applicant is of good moral character and doesn't have a criminal record? It absolutely is. So what's improper about reporting that the kid's in trouble? Right. The concern here is that the agency put on the brakes in the summer of 1985 instead of scheduling his interview. Before I'm getting close on time, I want to make two quick points. One is on the equal protection claim. I want to highlight three points, which is there's no case challenging the petitioning requirement that was at issue here for children of U.S. citizens in 1978. No case on that. In none of the equal protection cases of any kind that we found, including Washoe, involved a timely filed application by a citizen parent. And none of those cases that are discussed on this record, I mean in the briefs, had the benefit of Morales-Santana, which says that we look at citizenship claims with greater scrutiny and less deference to Congress. So that really sort of hammers home the message from Washoe. And then finally, the government is asking for a remand on the aggravated felony. They are not entitled to a remand on that issue. If there's a remand, it's for the opportunity to apply for cancellation. So I'll reserve the balance of my time if you have questions. Thank you. You may do that. Good morning, Your Honors. Catherine Clark appearing on behalf of Respondent. Cesar Dent and his mother, Roma Dent, declined to appear for two interviews scheduled on his childhood application, scheduled well before he aged out of eligibility on that application. And there is no prejudice following from any subsequent actions, because after Mr. Dent aged out, the INS promptly helped him to file and recommended approval of, on that very same day, his adult application. And then after Mr. Dent failed to appear for interviews on that application and also failed to keep his address current with the INS or with any other governmental agency for purposes of mailing notice, that application was denied in 1989. Mr. Dent concedes that he failed to keep his addresses current. He concedes his own extensive contribution to the denial in this case, and therefore he has failed to show a due process violation. The district court's determination that he failed to make a prima facie case was correct. And additionally, the equal protection claims lack merit. And if the court has no further questions, the government would request the court to remand the proceedings to the board to address removability and eligibility for cancellation of removal relief. Is there any reason why we shouldn't decide the crime of violence issue rather than remand it to the agency? The agency's decision on that issue was issued so many years ago, sort of before extensive additional precedent on crime of violence. Isn't that just a pure legal issue that we're perfectly competent to resolve? And wouldn't it help move this case along if we decided that issue? The court would be authorized to decide the issue. As a de novo question, the 16B analysis, the crime of violence analysis, would, of course, be governed solidly by DMIA. And the immigration judge and the board did not have a chance to or did not have a reason at the time to make a 16A analysis. So that would be the only potential reason for remand on the aggravated felony issue. But, yes, the standard of review on that question would ultimately be de novo, yes. And if the court has no further questions, then I would just argue for remand on that basis. Thank you. Thank you. You have some rebuttal time. And I'm particularly interested in the question of remand and whether we should determine the aggravated felony issue ourselves. So I think that this court should absolutely consider the aggravated felony issue. It's a pure issue of law. This court's decisions control. So DeCamp and Rendon control and make clear that 16A is not a possibility because there is no element of force in the escape statute of conviction that's at issue here. 16B, as the government just conceded, is controlled by the new case, DMIA. And am I correct that the offense of what Arizona calls escape is essentially a looting arrest? It's many different things. And so the language is knowingly escapes from custody, but it could be as minor as fiddling with your ankle bracelet for a juvenile. So there's one case on that. I thought I saw something in the briefs or the record indicating that he was essentially fleeing for morass, like what we would call felony eluding maybe in California. Well, I think just to refocus, the inquiry is elements-based for aggravated felony. I understand. I'm just trying to understand what Arizona considers escape. And what Arizona considers is a broad range of things, including there's a case, Brittany, that we talk about in the opening brief, where it's a juvenile who fiddled with her ankle bracelet. Because there are several degrees of escape. Yes. And this is the lowest level. Correct. Correct. Okay. So there is no ‑‑ the government really has not made any argument on the record that there is an element of violence. And their case law, both Ninth Circuit case law on low-level escapes, but particularly the Arizona case law on low-level escapes, makes very clear that there is no required element of violence for that claim. Okay. So the only way that I would ever get an answer to my question is if we could somehow apply the ‑‑ I forget what it's called. The modified categorical approach. Modified categorical approach and actually look at the charging document. Correct. But under DeCamp and Rendon, you will never get to that approach because it's indivisible. I understand your argument, and I'm not disagreeing with it. Right. Okay. And I understand the Court is skeptical, but I want to reinforce one procedural point here on the due process claim, which is that in Brown and in ‑‑ this is not Brown or Mondacco-Vega, where we're here on the basis of factual findings reviewed for clear error. We are here on summary judgment. And the district court erred by crediting favorably to the government its witness's testimony in a way that was improper under the summary judgment standard. But you have to show prejudice in order to establish a due process violation, do you not? Yes. And that gets back to the questions that Judge Graber and I were asking you about what happened as an adult. Yes, absolutely. So two important things the district court didn't do, right? One is that due process is the totality of the circumstances analysis, and prejudice is cumulative analysis as well. And we would pinpoint the prejudice. The prejudice to his denial of his child petition, a benefit that Congress created for U.S. citizens to pursue for their adopted children, was that he didn't get the benefit of that and gets routed into an adult. Counsel, allow us a question, please. I understand your argument, but if we decide as a matter of law that what happened after the adult application was approved outweighs any prejudice he may have suffered as a result of the failure to naturalize under the juvenile application, then the district court was correct in finding that there is a failure of a prima facie case to establish a due process violation. So I see where you're going with that. This is a very fact-intensive analysis on a high-stakes issue. I don't think that this court should be weighing as a matter of law how he was hurt by this, because I think it's too factual. But the question is whether a reasonable fact-finder could conclude that, as a matter of law, that there was prejudice here. That's the issue we have to decide. Correct. And I think it's unfair to take out of the picture something that really separates this case from Brown, which is that there was evidence, which the district court completely dismissed as irrelevant, of improper motive. That takes this case way far away from where we were in Brown, where we had a child who didn't even have something on trial. Well, it's questionable. I mean, that's also a question whether that e-mail reasonably could be construed as showing what you claim for it, because to me it says the opposite, essentially. Well, I think that this conversation about what it means shows that it's an important factual issue, and I understand you may come out differently on that, but that's what I think it underlines, is that no fact-finder has made that determination, and that's what we request. Thank you, counsel. Thank you so much. The case just argued is submitted, and we appreciate very much the arguments of both counsel.
judges: Graber, Tallman, Lemelle